THE UNITED PORTO RICAN BANK ET AL., Petitioners, v. DISTRICT COURT OF HUMACAO ET AL., Respondents.

No. 892.   Argued March 6, 1933.—Decided March 31, 1933.

*Walter L. Newsom, Jr.,* for petitioners. *Henry G. Molina* for interveners Carmen Fuertes *et al. Arturo Aponte* for intervener Garzot & Fuertes.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

A long term lease, or two or more such leases, provided for the payment of a quarterly rental and of taxes on the leased properties by the lessee. The United Porto Rican Bank entered into a contract for agricultural advances with the lessee. The lease provided that the lessors should give thirty days' notice to the bank before proceeding against the lessee in the event of default and extended to the bank the privilege of avoiding the result of such default by payment of the delinquent instalments within that period.

The lessee executed promissory notes for money advanced by the bank. Some of these notes were endorsed by the bank to the Baltimore Trust Company. Later, the trust company and the bank brought an action on these notes against the lessee. The complaint contained an averment as to the existence of a lien for agricultural advances on some two thousand acres of growing cane and on the sugar to be produced therefrom. It contained another averment on information and belief as to the continued existence of the lease. The lessors were made parties defendant. The prayer was for a foreclosure of the lien, for a sale of the cane or of the sugar produced therefrom and for such a decree as might be proper concerning the rights of the lessors.

Plaintiffs then asked for the appointment of a receiver. After outlining the averments of the complaint they set forth in their petition:

"4. That the said properties were leased to Garzot & Fuertes by their respective owners at the time of the execution of the aforesaid contract for agricultural advances between the United Porto Rican Bank and Garzot & Fuertes, and it is alleged on information and belief that the said contracts are still in force, the plaintiffs not having been parties to any contract of rescission either by agreement or by judicial process.

"                *         *         *         *         *         *         *

"7. That since the beginning of November, 1932, neither defendant, Garzot & Fuertes, nor the owners of the property, nor any other person, has attended to the cultivation and management of the said cane plantations, which have been in a state of. neglect from that date up to the present, and as a result of the lack of care and cultivation the said cane has depreciated in value and continues depreciating, and the said plantations are now in need of immediate attention and cultivation to prevent their almost total loss.

"8. That the defendant, Garzot & Fuertes, is insolvent with no sufficient funds, means, or required equipment to take care of the cultivation and management of the said cane, nor can the said defendant raise funds or obtain the necessary means and equipment for that purpose, nor has it shown any intention of paying due attention to the cultivation and management thereof; and it is alleged on information and belief that the owners of the respective properties can not give the proper attention to the cultivation and management of the said cane for lack of funds, means and necessary equipment, and as many of the owners are women, under age, and without experience and knowledge of agriculture, they are not competent and able to take charge of such cultivation and management either.

"9. That several persons claiming the proper authority have forbidden The United Porto Rican Bank, plaintiff herein, to enter the said properties in order to take charge of the cultivation and management of the said cane so as to prevent its loss, although the said plaintiff is and always has been ready to enter the properties and give the necessary attention to the cultivation and management of the said cane without prejudice to the defendant or to the owners of the said properties, and the said plaintiff, The United Porto

Rican Bank, is and always has been ready to pay to the owners of the said properties a proportionate share of the rent corresponding to that part of the said properties which are planted to canes and that may be required for said cultivation and management from the date of the entry of the receiver whose appointment is sought herein.

"10. That according to clause 'K' of the said deed No. 23, of July 29, 1931, executed before notary Walter L. Newsom, Jr., which deed contains the aforesaid contract for agricultural advances, The United Porto Rican Bank, the plaintiff herein, and/or the holders of the notes for agricultural advances, which were issued in accordance with the terms of the said contract which is the basis of the claim herein, are entitled at maturity, that is to say, on June 30, 1932, to take possession of the aforesaid cane plantations in order to take charge of the management and cultivation thereof or to the right to claim judicially the recovery of the said notes and to secure the appointment of a receiver to take possession of the said cane plantations and to manage them in accordance with the orders of the court without furnishing bond for the appointment of said receiver.

"11. That according to section 182 of the Code of Civil Procedure in force, a receiver may be appointed by the court in which an action is pending and which has been instituted by a creditor to subject any property or fund to his claim, whose right to or interest in such property or fund or proceeds thereof is presumable, provided it is shown that such property or fund is in danger of being lost, removed, or materially injured, as has happened and is still happening in the present case.

"12. It is alleged on information and belief that the defendant Garzot & Fuertes has failed to pay rent to the owners of the said properties and that no taxes on said properties have been paid for a long time and that owing to the failure to pay the said rent the owners are not receiving any income from their properties, which circumstance is prejudicial to the said owners, and that if a receiver were appointed this situation would be eased from the date of the entry of the said receiver.

"13. That the appointment of a receiver in the present case will be of great benefit to all the parties and will not prejudice in any manner the rights or preferences or liens held or claimed to be held by any of them, since all the aforesaid questions of preference in the section could be settled within this receivership, and as the proceeds from the receivership will be deposited with this court pending a settlement, the appointment of the said receiver, therefore, will result in the avoidance of a multiplicity of actions.

"14. That if this court grants this motion and by virtue thereof appoints a receiver acceptable to the plaintiffs, said plaintiffs can positively state that the receiver, by means of the proper receivership certificates, can raise the necessary funds to give the proper care to the cultivation, management and gathering of the cane crops.

"15.   .    .    .    .    .    .    .    .    .    .

"16. That the plaintiffs, as creditors for agricultural advances, have a lien, an interest and a right to the said plantations, in excess of the estimated value thereof."

The prayer was for the appointment of a receiver "to take immediate possession of the aforesaid cane plantations and such part of the aforesaid properties required for their management, and to take care, cultivate, manage and gather the said cane for the grinding thereof, and, under the direction of this court, to sell the sugar extracted from said cane until the final settlement of this suit, so that the proceeds from the aforesaid cane plantations may be applied as directed by this court, and to meet the preferred liens on such plantations, and, in compliance with any judgment or order entered in this case, the court being likewise requested to confer on the said receiver every power which in its judgment might be proper and necessary for the proper and efficient performance of his receivership, and the proper protection of the property involved therein, as well as the proper protection of the rights of the parties to this suit, with powers to engage, direct and dismiss such employees as may be necessary, to purchase materials, to rent equipment, to borrow money by means of receiver's certificates authorized by this court, to make contracts and agreements for the transportation and grinding of canes, and, in general, powers to execute all the acts required for its management, with the obligation to make the reports ordered by the court and to render the accounts of the management, all in compliance with the orders of this court and the usual practice."

The lessors in their answer denied the existence of any lien in favor of the bank and alleged that whatever lien the

bank may have had on the growing cane or on the sugar to be produced therefrom had been extinguished. They denied that the leases were in existence when plaintiffs filed the complaint or at any time after September 1, 1932, the date on which the said leases had been rescinded as far as the lessors and their properties were concerned. They alleged that from and after the date last mentioned they had been in actual possession of those properties and of the growing cane thereon. The prayer was for a dismissal of the action as to them.

In a cross-complaint the lessors alleged that the lessee and the bank had failed to pay certain instalments of rent and certain taxes on the leased properties; that as a result of the failure to pay taxes the Treasurer of Puerto Rico had attached these properties and was advertising a sale thereof; that each of the contracts of lease provided; "That for the said corporation to be found delinquent it is required that it should have failed to make two quarterly payments of the lease within thirty days from the expiration of the second quarter, and it will be only then that the lessors may proceed judicially against the lessee corporation; but it is previously required that the lessors give at least one month's notice in writing to the United Porto Rican Bank of their intention, during which month the back quarterly payments may still be made"; that lessors had notified the bank of the lessee's failure to pay taxes, and the said instalments and taxes not having been paid either by the lessee or by the bank, and because the lessee was insolvent, the said leases had been rescinded by mutual consent of lessors and lessee on September 1, 1932, and the lessors had entered into actual and absolute possession of their respective properties, since which time the said properties had remained in the sole and exclusive possession of the said lessors; that on September 1, 1932, when the possession of the said properties was delivered to the said owners thereof, certain growing crops of

cane not yet matured were found thereon; that the contracts of lease not having been carried out by the lessee, and the same having been rescinded, and the properties having been returned to their owners, the latter entered into possession thereof as the sole and exclusive owners of the said growing cane as well as of the soil and its appurtenances; that notwithstanding the nonpayment of rent and taxes the bank was claiming a lien for agricultural advances on the said cane and was asserting the superiority of such lien over that of the People of Puerto Rico to secure delinquent taxes for the current year and the three preceding years; that the bank was claiming for itself and others the right to appropriate the said growing cane and the sugar to be produced therefrom, without any obligation to pay the past-due and unpaid instalments of rent up to September 1, 1932; that the bank had admitted its obligation to pay cross-complainants the reasonable value of the use of so much of the land as was occupied by cane or as was necessary to be used for the cultivation and harvesting thereof but had refused to agree with cross-complainants as to what would be such reasonable value, and had refused to pay cross-complainants anything whatever as the reasonable value of the use and occupation of the properties in the cultivation and harvesting of the said cane; that as a result of the said right or lien claimed by the bank, cross-complainants had been unable to raise money for the harvesting of the said cane which was ripe and ready to be ground; and that if the same was not ground immediately cross-complainants would suffer great loss.

The prayer was for a decree:

''(1) That the cross-complainants are the sole or exclusive owners of the cane plantations on their respective properties described in paragraph 2 of the amended complaint and in exhibits A and B, and that as such owners they are entitled to be paid the total value of the sugar obtained therefrom during the cane crop of 1933 and following;

"(2) That there does not exist any lien or preferred right in favor of the United Porto Rican Bank or in favor of any other person, corporation or entity on, or in connection with, the cane plantations on the properties of the defendants which are described in paragraph 2 of the cross-complaint, with the exception of the lien or preferred right in favor of the People of Puerto Rico for the payment of taxes imposed relative to each of said properties;

"(3) That pending a determination by this court of the person entitled to said cane and the right of the parties in connection therewith, a receiver should be appointed to take immediate possession of the said cane plantation for the purpose of gathering the crops and to secure the grinding thereof and the sale of the sugar therefrom, as may be directed by this court, with power to engage, direct and dismiss such employees as may be necessary, to buy or rent implements for the gathering, materials and equipment, and to borrow money by means of receiver's certificates and to render accounts of his management;

"(4) To grant any other remedy that it may deem proper, and . . ."

At the same time cross-complainants filed a petition for the appointment of a receiver. They made their answer and cross-complaint a part of the petition. In this petition cross-complainants alleged that although they were in physical possession of their respective properties and of the cane growing thereon, the bank was alleging and insisting that they were not in the enjoyment of such possession, that they were not the owners of the cane, and was claiming an agricultural lien upon the said cane superior to any right possessed by cross-complainants either as owners of the land or as owners of the cane, and superior to the lien of the People of Puerto Rico for delinquent taxes of the current year and of the three preceding years; that as a result of these claims by the bank and of its assignees, petitioners had been unable to raise money upon the said cane for the payment of taxes or for the harvesting of the cane; that the Treasurer had attached the properties of petitioners and had advertised a

sale which would be held February 20th, unless a receiver was appointed with power to borrow money by the issuance of receiver's certificates in order to pay the said taxes and expenses; and, upon information. and belief, that the bank and/or its assignees intended to acquire directly or indirectly the properties of petitioners at the tax sale.

On the day of the hearing in the district court, February 17th, after the overruling of a motion for postponement, plaintiffs withdrew their petition for the appointment of a receiver and demurred to the petition of cross-complainants. The hearing then proceeded upon the petition of cross-complainants and the demurrer thereto, and the district judge, after argument by counsel on both sides, appointed a receiver. The dispositive portion of the order reads in part as follows:

"It is ordered and decreed further that the aforesaid receiver shall be empowered as follows: To take care, cultivate, manage, gather, and grind the cane on the aforesaid properties and to this end to make such contracts as may be necessary for the transportation and grinding of such cane.

"It is further ordered and decreed that the said receiver shall have, and he is hereby intrusted with, power to borrow money and to issue and deliver as evidence of such loans, receiver's certificates, which certificates shall be redeemed by the receiver from the first funds obtained from the sale of the sugar from the said cane; and out of such borrowed funds the receiver shall pay, in the first place, all the credits in favor of the People of Puerto Rico which may be overdue on account of taxes for the last three years levied on each and all of such properties and for the unpaid current year, as well as the necessary expenses for the management, cultivation, care, and gathering of the said cane.

"And the aforesaid receiver is further authorized to come to an agreement with the Treasurer of Puerto Rico, if possible, to stay the public sale of the properties of the cross-complainants which has been set for the 20th instant, on condition that all the back taxes shall be paid by the receiver out of the first funds to come into his possession."

The essential difference between the powers here conferred upon the receiver and those enumerated in the prayer of plaintiffs' petition for a receiver lies in the provision for payment of delinquent taxes and the authorization of a contract with the Treasurer of Puerto Rico for such payment. It may be conceded that plaintiffs were within their rights in withdrawing their petition for the appointment of a receiver and opposing the petition of cross-complainants. Plaintiffs' petition, however, did not become extinct. It remained as document in the case. Plaintiffs were still bound by the admissions and statements of facts contained therein. Cross-complainants had a right to assume that their petition would be construed and considered in the light of such unchallenged averments as were contained in plaintiff's petition.

We have read most of the cases cited in support of the text in Clark on Receivers, volume 1, page 125; 23 R.C.L. 15, section 9; and 53 C. J. 30, section 15, relied on by petitioners in the present certiorari proceeding. We do not have access to 19 N. J. Eq. The case presented by cross-complainants is exceptional. It does not come within the reasoning or the principle of the decisions which hold that property in possession of the owner will not be placed in the hands of a receiver. Here the possession of cross-complainants was a futile, ineffectual, powerless possession. They were in the possession of perishable property, growing cane ready to be ground worth many thousands of dollars which would become worthless if not promptly harvested and ground. Because of the action brought by plaintiffs, the hands of cross-complainants were tied. They were as helpless in the face of this impending loss as they would have been if the property had been in the possession of the cross-defendants and was about to be destroyed or dissipated by them. Such a possession by cross-complainants did not stand in the way if the case, aside from the question of possession, was a proper one for the appointment of a receiver.

Section 182 of the Code of Civil Procedure authorizes the appointment of a receiver in any action "by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or jointly interested in any property or fund, on the application of the plaintiffs, or of any party whose right to or interest in the property or fund, or proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." It also authorizes such appointment "In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

In the instant case, plaintiffs are creditors who have brought an action to subject certain growing crops to their claim. They have made the owners of the land parties defendant. Even upon plaintiffs' theory of an existing lease, these owners, as lessors, have a lien upon the cane to secure the payment of rental, which by the terms of the lease itself includes taxes.

Section 182, *supra*, authorizes the appointment of a receiver either on the application of a plaintiff or on the application of "any party whose right to or interest in the property or fund, or proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." Plaintiffs themselves allege that the growing cane has had no attention since November, that the lessees are insolvent and unable to cultivate or harvest the same, that the lessors and owners of the land are equally unable to act, and that unless something is done to relieve the situation at once the result will be almost a total loss of the crop.

The owners of the land are not only defendants with a probable interest as lessors in the growing crop, if plaintiffs' theory of the case be correct, but they are also cross-complainants. In this capacity they assert not a mere interest

in the growing crops but an exclusive right of ownership. They say that the lease was rescinded by agreement between the lessors and the lessee after notice to the bank of lessee's default in the payment of rent and that the bank and its assignees have lost whatever lien they may have had upon the crop. Nevertheless, they say that, because of the bank's attitude and action in asserting its claim, they have been unable to raise money to harvest the cane upon which plaintiffs claim to have a lien and that if this cane is not harvested and ground immediately they will suffer great loss. Section 3 of the Act providing for contracts for agricultural purposes, as amended in 1925 (Session Laws, p. 346), provides that the contract for agricultural advances when made with a lessee shall not extend beyond the term and conditions of the lease, but says that "Where the lessee or usufructuary under any title shall fail to perform his obligations to the owner or representative of the property, the creditor making the advances for agricultural purposes may, on having knowledge of the fact, fulfill such obligations for account of the debtor and charge the same to the account of advances for agricultural purposes." The theory of the cross-complainants is that the bank waived or lost its lien through its failure to pay the rent when notified of the lessee's default, and that it thus failed to restore the *status quo* as did Molina in *Molina* v. *Muñoz*, 31 F. (2d) 727.

Cross-complainants, as we have shown, also assert the existence of a tax lien superior to any that plaintiffs may have on the cane in question. Section 291 of the Political Code (Comp. Stat. 1911, sec. 2943) exempts from taxation—"(*h*) The growing crops and products of the land actually owned by and still in the hands of the producer." As shown by the context and especially by subdivision (*m*), this does not necessarily mean that growing crops as a part of the land which produces them are not subject to the tax lien on that

land. Section 4 of the Act providing for agricultural advances, as amended in 1925 (Session Laws, pp. 346, 348), gives the agricultural lien priority over all subsequent lien "except the tax lien in favor of The People of Porto Rico, as provided by law." Section 15 of the same act, as adopted in 1910, amended section 1824 of the Civil Code (now section 1823 of the 1930 edition) so as to make the lien for agricultural advances subordinate only to the lien for taxes but still subordinate to that lien.

Counsel for cross-complainants do not subscribe to the theory of a joint enterprise as set forth in *Molina* v. *Muñoz. supra,* but submit that, even if the *dictum* in that case be sound and applicable to the facts in the case at bar, the question remains as to who should pay the taxes.

We can not agree with counsel for plaintiffs, petitioners in the present proceeding, that the appointment of a receiver was void for want of jurisdiction. We are inclined to agree with counsel for cross-complainants that the growing crops are subject to the tax lien and that a part at least of the taxes may be properly paid by the receiver out of the proceeds of the crop. Obviously, the order should have been more specific in some respects but counsel for cross-complainants says that this defect has been corrected in a contract entered into by the receiver with the Treasurer of Puerto Rico. Perhaps the district court should have ordered only a certain proportion of the taxes to be paid by the receiver. This is a question that may depend in part on facts and circumstances not disclosed by the record. The writ of certiorari was issued for the purpose of determining whether or not the district court exceeded its powers in appointing a receiver. Other matters of minor importance which are not shown to have been adequately discussed at the hearing in the district court, may be more fully presented to the district judge and need not be decided now.

The writ will be annulled.